**Solomon LEW, Plaintiff-Appellant,**

v.

**Stanton MOSS and Harlean Moss, Defendants-Appellees.**

No. 85–6529.

United States Court of Appeals, Ninth Circuit.

Submitted July 10, 1986.\*

Decided Aug. 15, 1986.

App.P. 34(a); Ninth Circuit Rule 3(f).

Mitchell N. Reinis, Reinis, Reinis & Blum, Los Angeles, Cal., for plaintiff-appellant.

Alan M. Klein, Richard J. Pettler, Los Angeles, Cal., for defendants-appellees.

Before ANDERSON, POOLE and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge:

Solomon Lew appeals from the district court's entry of dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1332. Lew contends that defendant Stanton Moss was domiciled in California at the time this diversity action was commenced and that the district court therefore erred in dismissing the case. We agree and reverse.

I

## FACTS AND PROCEEDINGS

In August 1984, Lew obtained a judgment in California against Moss and Neil Friedman for approximately $355,000 (the "California Judgment"). On November 1, 1984 Lew filed the present diversity action against Moss and his wife, Harlean Moss ("Harlean"). Lew alleged that in July of 1982 Moss conveyed to Harlean his community property interest in a residence located in Beverly Hills, California (the "Beverly Hills Property" or the "Property") to avoid satisfaction of the anticipated California Judgment. Lew sought a judgment setting aside the conveyance of the Beverly Hills Property to Harlean as a fraudulent conveyance, determining that the Property remained the community property of Moss and Harlean, and declaring that the Property was subject to execution and sale to satisfy the California Judgment. Lew alleged that Moss and Harlean "are now and at all times herein concerned were citizens of the State of California."

Moss and Harlean answered. They alleged "that defendant Stanton Moss is a resident of Hong Kong." They subsequently moved for dismissal, claiming that at the time Lew filed the complaint in the district court Moss was then a resident of Hong Kong and as a result the suit was not between "citizens of different States" of the United States (28 U.S.C. § 1332(a)(1)), and, therefore, there was no diversity of citizenship on which to base jurisdiction. Moss attached a "declaration" to the motion for dismissal in which he stated he had maintained a domicile in Hong Kong "since the first week of October, 1984, when I departed the United States." Moss also stated that he did not learn of the present action until he had moved to Hong Kong.

Moss's deposition was taken in July 1985. He testified that he and Harlean had come to California in 1976 or 1977 and purchased the Beverly Hills Property at that time. Both of them resided at the Property until

at least September of 1984. Moss had been involved in the garment business for several years. The business often required a great deal of travel. Between September 1984 and February 1985, Moss had been an employee of Sunshine Country, a company involved in the purchasing of garments. Sunshine Country had one office and that office was located in Hong Kong.

Moss further testified he had been living at the Shangri La Hotel in Hong Kong "[o]n and off since I believe it was September or October [of 1984]." Between September 1984 and February 1985, he traveled to numerous cities in the Far East, including Bangkok, Thailand, Singapore, Malaysia, Penang in Malaysia, Jakarta in Indonesia, and Dhaka in Bangladesh. Moss stated that when he was not traveling to these cities he "resided or lived overnight" in the Shangri La Hotel.

Moss stated he returned to Los Angeles for Thanksgiving in 1984 and for the Chinese New Year in February 1985. He stayed at the Beverly Hills Property on those occasions. Harlean continued to live at the Beverly Hills Property until January of 1985 and she worked as a travel agent in Beverly Hills until that time. She joined Moss in Hong Kong in January 1985. The Beverly Hills Property is rented out to tenants under a three-year lease. Harlean collects the rent.

Moss voted by absentee ballot in the 1984 presidential election. His California driver's license expired in September 1984, was renewed, and is in effect until 1988. On the license, the Beverly Hills Property is listed as his home address. Moss testified that he did not know who paid for the renewal of the license and that he did not have anything to do with the renewal. Moss also stated he had one bank account, located in Hong Kong.

In January 1985, Moss moved from the Shangri La Hotel to an apartment in Hong Kong. His wife and two adult children joined him there at that time. In February 1985, Moss and Harlean submitted an application with officials in Hong Kong for residency there. Moss continues to reside with his wife and family at the Hong Kong apartment.

At the hearing on Moss's motion for dismissal, the district court ruled that Lew bore the burden of establishing that Moss's domicile was California at the time the complaint was filed. The court stated that the "[p]laintiff always has the burden of establishing subject matter jurisdiction." The court found that:

> [T]he plaintiff has not met his burden of establishing that the defendant was a citizen of California at the time this lawsuit was instituted. And so on that basis, I conclude that there is no subject matter jurisdiction because a citizen of the United States cannot be sued under diversity jurisdiction unless he is a citizen of some other state. And in October of '84 the defendant Stanton Moss was not a citizen of California or of any other state of the United States.

The court dismissed Lew's suit "in its entirety" against both Moss and Harlean. Lew appeals.

II

LEGAL STANDARD AND STANDARD OF REVIEW

Federal district courts are vested with original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). To demonstrate citizenship for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States. *See, e.g., Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir.1983); *Hill v. Rolleri,* 615 F.2d 886, 889 (9th Cir.1980). Our cases have established several principles to guide this inquiry. First, the party asserting diversity jurisdiction bears the burden of proof. *Resnik v. La Paz Guest Ranch,* 289 F.2d 814, 819 (9th Cir.1961). Second, a person is "domiciled" in a location where he or she has established a "fixed habitation or abode in a particular place, and

[intends] to remain there permanently or indefinitely.'" *Owens v. Huntling,* 115 F.2d 160, 162 (9th Cir.1940) (*quoting Pickering v. Winch,* 48 Or. 500, 87 P. 763, 765 (1906)); 1 J. Moore, *Moore's Federal Practice* ¶ 0.74(3.-3), at 707.58–60 (1985) [hereinafter *Moore's* ]. Third, the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed. *Hill,* 615 F.2d at 889.

Finally, a person's old domicile is not lost until a new one is acquired. *Barber v. Varleta,* 199 F.2d 419, 423 (9th Cir.1952); *see also Restatement (Second) of Conflicts* §§ 18–20 (1971) (and examples provided). A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely. *See Owens,* 115 F.2d at 162; 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3613, at 544–45 (1984 & Supp.1986) [hereinafter *Wright & Miller* ].

Courts in other jurisdictions have recognized additional principles relevant to our present analysis. The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. *Wright & Miller, supra* § 3612, at 529–31 (citing authorities). *See also Bruton v. Shank,* 349 F.2d 630, 631 n. 2 (8th Cir.1965); *S.S. Dadzie v. Leslie,* 550 F.Supp. 77, 79 n. 3 (E.D. Pa.1982); *Mizell v. Eli Lilly & Co.,* 526 F.Supp. 589, 592–93 (D.S.C.1981); *Griffin v. Matthews,* 310 F.Supp. 341, 342–43 (M.D. N.C.1969), *aff'd,* 423 F.2d 272 (4th Cir. 1970). The courts have also stated that domicile is evaluated in terms of "objective facts," and that " 'statements of intent are entitled to little weight when in conflict with facts.'" *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 556 (5th Cir. 1985) (*quoting, Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir.), *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972)); *Korn v. Korn,* 398 F.2d 689, 691– 92 n. 4 (3rd Cir.1968).

The determination of a party's domicile is a mixed question of law and fact. *See, e.g., Holmes v. Sopuch,* 639 F.2d 431, 434 (8th Cir.1981); *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 702 (1st Cir.1979); *Julien v. Sarkes Tarzian, Inc.,* 352 F.2d 845, 847–48 (7th Cir.1965). Under our standard, a mixed question of law and fact is reviewed under the "clearly erroneous" standard where the application of the rule of law to facts requires an inquiry that is " 'essentially factual.'" *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc) (*quoting Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982)), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The factors listed above for determining domicile are " 'essentially factual,'" and hence the district court's determination of Moss's domicile is reviewed under the "clearly erroneous" standard. *See Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir. 1983) (and authorities cited *supra* ); *Wright & Miller, supra* § 3612, at 540–41 (citing authorities).

The district court, however, not only made a determination of Moss's domicile, but also ruled that Lew bore the burden of proving that Moss was domiciled in California. Whether the district court properly allocated the burden of proof and the burden of production of evidence, and whether Moss carried his burden of production, present questions of law reviewable de novo. *See Thorne v. City of El Segundo,* 726 F.2d 459, 464 n. 5 (9th Cir.1983) (district court's conclusion that party has stated a prima facie case and hence has shifted the burden is reviewed de novo), *cert. denied,* —— U.S. ——, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); F. James & G.C. Hazard, *Civil Procedure* § 7.6, at 242 (2d ed. 1977) (allocation of burden is question for court).

## III

### ANALYSIS

#### A. *Allocation of Burden*

We first consider the district court's ruling that Lew bore the burden of proof that Moss was domiciled in California.

Moss stated in his deposition that he lived in California from 1976 or 1977 to September of 1984. He maintained, however, that he changed his domicile to Hong Kong in September or October of that year (before Lew filed the present complaint). Lew argues that Moss should bear the burden of proving that he changed domicile from California to Hong Kong. Moss responds that the burden rests on Lew.

Moss and Lew each point to established principles of jurisdiction to support their respective contentions. Moss cites cases which state that the proponent of jurisdiction bears the burden of proof. *See, e.g., Resnik*, 289 F.2d at 819; *Wright & Miller, supra*, § 3611, at 522–23 (citing authorities). As the Supreme Court stated: "The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Lew's rejoinder is equally compelling. He points out that the courts have created a presumption in favor of an established domicile as against a newly acquired one. *See, e.g., Holmes*, 639 F.2d at 434; *Hawes*, 598 F.2d at 701; *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir.1962); *Stine v. Moore*, 213 F.2d 446, 447 (5th Cir.1954). Lew argues that this presumption shifted the burden of proof onto Moss to demonstrate a change of domicile. *See Janzen*, 302 F.2d at 425.

The apparent conflict between these two principles, however, is resolved by resort to a third, well-established principle. The "burden" in a civil case involves not one but *two* elements: the burden of going forward with proof (the burden of "produc-

tion") and the burden of persuading the trier of fact (the burden of "proof"). J. Weinstein & M.A. Berger, *Weinstein's Evidence* ¶ 300(01), at 300–2–3 (1985) [hereinafter *Weinstein's* ]; E. Cleary, *McCormick on Evidence*, § 336, at 947 (3d ed. 1984) (citing authorities). A presumption which shifts the burden of *production* has the sole effect of forcing the opponent of the presumption to produce enough evidence to avoid a directed verdict. *Id. See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981) (involving Title VII case); *Lowe v. City of Monrovia*, 775 F.2d 998, 1006 n. 5 (9th Cir.1985) (same). A presumption which shifts the burden of proof, in contrast, requires the opponent of the presumption to prove or disprove the existence of the disputed fact. *Weinstein's, supra* ¶ 300(01), at 300–2–3.

In the present case, Moss conceded he lived in California at least until September of 1984. The presumption in favor of Moss's established domicile (California) as against his allegedly newly acquired one (Hong Kong) plainly applies here. However, the presumption only shifted the burden of production of evidence. Lew continued to have the burden of proof. *See, e.g., Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir.1966); *Avins v. Hannum*, 497 F.Supp. 930, 936 (E.D.Pa.1980); *Wright & Miller, supra* §§ 3611, 3612, at 524–25, 535–36; *Moore's, supra* ¶ 0.74(3.3), at 707.60 n. 6 (citing authorities). Moss was required, however, to produce enough evidence to substantiate his claim of a change in domicile to withstand a motion for directed verdict.

#### B. *Evaluation of Facts in Light of Burden of Production*

In deciding whether Moss produced evidence sufficient to have survived a motion for directed verdict, we apply the same standard of review as we would apply in reviewing an order granting a motion for directed verdict. That standard is the

same on appeal as it is in the district court. *Othman v. Globe Indemnity Co.,* 759 F.2d 1458, 1463 (9th Cir.1985). A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. *Shakey's, Inc. v. Covalt,* 704 F.2d 426, 430 (9th Cir.1983). It is not proper if there is substantial evidence to support a verdict for the non-moving party. We consider all of the evidence in the light most favorable to the non-moving party (Moss in this case) and draw all reasonable inferences in favor of that party.

■ Moss failed to meet his burden of production. He testified at his deposition that he lived at the Shangri La Hotel in Hong Kong "on and off since ... September or October [of 1984]", and that when he was not traveling he stayed at that hotel. He also stated his company was located in Hong Kong. Domicile, however, requires both physical presence at a given location and an intent to remain there indefinitely. The evidence shows that Moss traveled *throughout* the Far East between September 1984 and February 1985, stayed at various hotels, and was not accompanied by his wife or family; he did not rent an apartment in Hong Kong until his wife and two adult children joined him there in January 1985; he returned to Los Angeles for Thanksgiving in November 1984 and for the Chinese New Year in February, 1985 and stayed at the Beverly Hills Property on those occasions; his California driver's license expired in September 1984 and was renewed for a four-year period; his wife continued to live in the Beverly Hills Property and work in Beverly Hills, California until she joined him in Hong Kong in January, 1985. Moss failed to present substantial evidence to establish (a) that he was physically located in Hong Kong on November 1, 1984, when the complaint in this case was filed, or (b) that he intended to remain there indefinitely. *See, e.g., Carter v. McConnel,* 576 F.Supp. 556 (D.Nev.1983) (*passim;* finding no change in domicile); *Howze v. Hartman,* 508 F.Supp. 13 (E.D. Tenn.1980) (same).

We hold that Moss failed to ＼ burden of production. He did not ṗ substantial evidence to support his con＼ tion that his domicile had changed from California to Hong Kong by November 1, 1984. The district court therefore erred in dismissing the case for lack of subject matter jurisdiction.

REVERSED AND REMANDED.